**MISSION THEATRES, Inc. et al. v. TWENTIETH CENTURY–FOX FILM CORPORATION et al.**

No. 4729.

United States District Court
W. D. Missouri, W. D.

Jan. 4, 1950.

Louis B. Schwartz, Minneapolis, Minn., Duvaul P. Strother, Kansas City, Mo., for plaintiffs.

Cooper, Neel, Sutherland & Rogers, Spencer & Britt, Kemp, Koontz, Clagett & Norquist, Kansas City, Mo., for defendants.

RIDGE, District Judge.

After the expiration of the "Consent Decree" entered in United States v. Paramount Pictures et al., the District Court, Southern District of New York, held "everything relating to rights under and remedies for violation of the Sherman Act (was) open for consideration" of the Court in that case. 66 F.Supp. 323, 333. The Court specifically stated, "we do not deem ourselves bound by any provision of the consent decree, if we now find that it violates the Sherman Act." 66 F.Supp. at page 342. As revealed by the findings of fact and final decrees subsequently entered in that case, when the Court came to consider the issues of "clearances and runs" there submitted, it found many matters in the historical development thereof as evolved by distributor-defendants and exhibitor-defendants in that action that were held to be in violation of the Sherman Act, 15 U.S.C.A. § 1 et seq., and enjoined said defendants accordingly. For instance, as the Supreme Court said, 334 U.S. 131, 146, 68 S.Ct. 915, 924, 92 L.Ed. 1260, the District Court found, and the evidence at the trial of that action amply showed: "that many clearances had no relation to the competitive factors which alone could justify them. The clearances which were in vogue had, indeed, acquired a fixed and uniform character and were made applicable to situations without regard to the special circumstances which are necessary to sustain them as reasonable restraints of trade. The evidence (the Court said was) ample to support the finding of the District Court that the defendants either participated in evolving this uniform system of clearances or acquiesced in it and so furthered its existence. That (such) evidence * * * (was) adequate to support the finding of a conspiracy to restrain trade by imposing unreasonable clearances."

Notwithstanding the finding of fact made and the final decrees entered by the District Court in the aforesaid proceedings, all defendants in this private Sherman Act case now proffer amendments to their respective answers, setting forth the defense, that because Dickinson, Inc. (one of the plaintiffs here), filed a "Demand for Arbitration" and submitted to the Motion Picture Arbitration Tribunal set up under Section VIII of the consent decree, the proposition that the maximum clearance which the Dickinson Theatre, Mission, Kansas, then had was unreasonable and should be fixed at not to exceed 14 days after first run in Kansas City, Missouri; and, the Motion Picture Arbitration Tribunal in that proceeding determined and entered an award, the effect of which was, that it had no power to fix or determine the availability of pictures to Dickinson after first run in Kansas City, Missouri; that the then existing clearance the Plaza Theatre (a Fox affiliate) had over the Dickinson could not be the subject of arbitration in that proceeding, so far as Twentieth Century-Fox and its affiliates were involved; but that so far as the remaining four consenting defendants (Paramount, Loew's, RKO and Vitagraph) were there concerned, the maximum clearance which they could thereafter grant in license of pictures to the Plaza, should be 14 days over the Dickinson; that said award constitutes a judicial determination that the clearance granted to first run theatres in Kansas City, Missouri, over the Dickinson Theatre, is proper and lawful; that the reasonableness or lawfulness of the clearance of the Plaza over the Dickinson, has been adjudicated by said award; and, that all of the plaintiffs, whether parties to that arbitration proceeding or not, have suffered no actionable damages since the effective date of said award; and, that said award is as to all plaintiffs *res adjudicata* of the issues of clearance in this case. That the matters so proffered by defendants do not have the legal effect defendants claim for them and are not *res judicata* of any issue raised by plaintiffs in the instant action is clearly evident when the following is considered.

Tersely stated, the issues presented in the instant complaint (to which the plea of *res judicata* is addressed) are that the defendants combined and conspired with each other to adopt, and maintained a system of "clearances" between runs which operated especially in favor of theatres owned or controlled by, or affiliated with, one of the producing defendants, to the prejudice of unaffiliated, independent theatres, such as the Dickinson, as a result of which plaintiffs claim damages of defendant under Section 4 of the Clayton Act, Title 15, U.S.C.A. § 15. The acts which plaintiffs here allege defendants committed in consummation of that conspiracy are similar to those acts respecting clearances and runs, that were found to exist by the District Court and made the subject of its final decrees in the Paramount case, supra. Such issues were not submitted to the Arbitration Tribunal set up under Section VIII of the consent decree, and that tribunal had no jurisdiction to entertain or adjudicate any such issues.

When the five consenting defendants in the Paramount case agreed to the entry of the consent decree, that was only to be binding on them for a period of three years, they merely agreed that a "rule of thumb" be set up in Section VIII of the consent decree by which an Arbitration Tribunal would determine whether a given clearance was reasonable or unreasonable under the standards there fixed in said Section VIII. An examination of the factors which an arbitrator was bound to consider in determining the reasonableness of a clearance under Section VIII of the consent decree and the law as finally declared by the District Court after trial of the issues in the Paramount case, and affirmed on appeal by the Supreme Court, clearly reveals that such "rule of thumb" does not establish a standard for determining the reasonableness of clearances the same as does the law when tested by Sherman Act standards. By the "rule of thumb" set forth in Section VIII of the consent decree, the Arbitration Tribunal was required to take into consideration, among other things, the factor of the historical development of clearances in a particular area. That factor, when considered with the provisions of Section XVII of the consent decree, had the practical effect of keeping alive during the period of the consent decree "clearances" particularly, as between a distributor-defendant and its affiliates the same as they existed at the time the complaint in the Paramount case was first lodged with the District Court. In light of that one limitation so placed on the Arbitration Tribunal by Section VIII of the consent decree, it is manifest that that tribunal had no power or jurisdiction to consider or determine whether clearances in a particular area were evolved out of trade practices between the distributor-defendant and its affiliates, the result of which was to restrain trade, or were the result of a combination or conspiracy between the defendants in that action which would make a given clearance, not only unreasonable, but unlawful under Sherman Act standards. It is clear from the opinions and final decrees entered in the Paramount case, that when the District Court came to consider the issue of "clearances", that it found in the historical development thereof, that independent exhibitors were met by a fixed scale of "clearances, runs and admission prices" so that under the circumstances there disclosed they had no fair chance then, or in the future, to effect any change in the situation of clearances historically evolved by defendants. As a consequence of the foregoing, the District Court did not consider the historical development of clearances as a proper factor for determining the reasonableness of a clearance, but on the contrary, by its final decrees in the Paramount case, first, by proposing a system of competitive bidding, and finally by decreeing disaffiliation between distributor-defendants and exhibitor-defendants, sought to introduce competition into historical development of clearances.

▮ From the foregoing, we are led to the conclusion that the factors and the "rule of thumb" that the five consenting defendants agreed to be bound by in Section VIII of the consent decree, and what this District Court under the issues raised

by the instant complaint must consider in determining the reasonableness of clearances tested by Sherman Act standards, are so different and wholly dissimilar that the award entered in the arbitration proceedings cannot be said to conclude, as by res judicata, any of the issues here presented to the Court for determination. First, because of the limited jurisdiction of the Arbitration Tribunal under Section VIII of the consent decree to consider the issues of clearance; and, second, because the law as finally declared by the District Court and the Supreme Court in the Paramount case reveals an altered situation existing between an arbitration proceeding entered into under Section VIII of the consent decree and the trial of the issue of reasonable clearance by the Sherman Act standards, so as to make the "rule of thumb" set forth in the consent decree inapplicable to the law relating to that issue under the Sherman Act. Res judicata can be no defense in a subsequent action where the law under which the first judgment was obtained is different than that applicable to the second action, or there has been an intervening decision, or a change in the law between the first and second judgment, creating an altered situation. Cf. DeSollar v. Hanscome, 158 U.S. 216, 221, 15 S.Ct. 816, 39 L.Ed. 956; State Farm Mut. Automobile Ins. Co. v. Duel, 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. For the foregoing reason alone, the award in arbitration defendants here seek to proffer in this action by way of res judicata cannot be sustained.

 It is elementary law that a prior decision of a Court or Arbitration Tribunal is only binding between the parties who participate in the first proceeding leading up to the judgment or award, or their privies. If there is a central theme running through the course of the opinions of the District Court and the Supreme Court in the Paramount case concerning clearances, it is that when tested by the Sherman Act standards, they historically fixed the status of a given theatre "not on the basis of its appointments, size, location,

and other competitive factors normally entering into such a determination, but rather upon the sole basis of whether it (the theatre) were operated by the exhibitor-party to the agreement" with the distributor. 66 F.Supp. 323, 345. One cannot read the opinions in the Paramount case and come to a conclusion other than that clearances granted in a license between a distributor and exhibitor are not to be considered as a fixed status, but a subject that is and should be always open to bargaining between the parties. If it were otherwise, there would be no fair chance, as the District Court said in its opinion, for either the present or any future owner of a theatre to change a clearance status. That clearances were to be the subject of open bargaining at all times between a distributor and an exhibitor is the clear import of both the consent decree and the final decree in the Paramount case. Notwithstanding any award under Section VIII of the consent decree, the parties distributor and exhibitor were left free to bargain for a clearance not in excess of that found to be reasonable by an award entered under said section. Under the final decree in the Paramount case, they may do likewise. Clearances and runs being an open subject of bargaining between a distributor and an exhibitor, a contract granting the same is and was a mere license, subject to change at the will of the parties and is, therefore, personal to the parties to the license. As such, it could not permanently fix the status of any theatre so as to bind subsequent owners. To establish that the award in question fixed the status of the Mission Theatre so as to bind subsequent owners, some right must exist in the licensor-distributor to establish that status. That no such right exists is manifest from the law as declared by the Supreme Court when it said [334 U.S. 131, 68 S.Ct. 924]: "The only measure of reasonableness of a clearance by Sherman Act standards is the special needs of the licensee for the competitive advantages it affords." Consequently, no right exists in a licensor to bind a given theatre to a fixed clearance or run. That being the case, then an award which

merely established a maximum period of clearance, under then existing conditions, could not legally fix the status of plaintiffs' theatre so as to bind parties plaintiff and defendant herein not parties to the arbitration proceeding in which it was entered. Manifestly, such award could have no effect as against the parties plaintiff here who were in ownership of the theatre in question prior to the making of said award.

In our former memorandum, we stated that "the fact of the adjudication made by the Arbitration Tribunal is accepted by this Court as binding on plaintiffs," as did Judge Duncan in St. Louis Amusement Co. v. Paramount Pictures et al., 61 F. Supp. 854, and the Eighth Circuit Court of Appeals in St. Louis Amusement Co. v. Paramount Film Distributing Corp., 168 F.2d 988. By that statement, we meant that if plaintiffs in the case at bar were merely making complaint against defendants, as was done in the St. Louis Amusement Company case, to the effect that the defendants conspired to not grant them clearances except as fixed in the arbitration award, and nothing more was the basis of the plaintiffs' complaint, then the award in question would perhaps be a defense to the plaintiff Dickinson, Inc.'s cause of action here asserted. That is not our present situation. In the course of the opinion in the St. Louis Amusement Company case, Judge Johnsen stated: "We are not here concerned with any of the matters considered and discussed by the Supreme Court in its opinion on the appeals (in the Paramount case), except as to the use of the arbitration system and the expressions made in relation thereto, for such light as they may throw upon the merits of plaintiffs' contentions." 168 F.2d 990. The basis of the plaintiff's contention in the St. Louis Amusement Company case was that the combination and conspiracy relied on consisted of agreements among the defendants not to make any license contract with plaintiff there, except on the basis of the period of clearance prescribed by the award in that action. That, standing alone, the Court held could not constitute a violation of the Sherman Act. In the case at bar, the plaintiffs allege that the licenses they were able to receive, to exhibit pictures in their theatres, were as the result of a combination or conspiracy which consisted of acts denounced as violation of the Sherman Act (such as were found to exist by the final decree in the Paramount case), and not solely because of matters that were submitted to arbitration under the consent decree. If plaintiffs are able to prove, as they allege, that acts similar to those that were found in the Paramount case, were committed by defendants in violation of the Sherman Act, and directly formed the basis of the licenses that were granted to them by defendants, then the factual issues in this action are wholly dissimilar to those that were joined in the St. Louis Amusement Company case, and under such circumstances the opinion in that case is no authority for the proposition that the award here considered is *res judicata* of the instant issues.

The Supreme Court in the Paramount case classified the arbitration proceedings set up by the consent decree as being "merely an auxiliary enforcement procedure." Being "merely an auxiliary enforcement procedure" set up by agreement of parties for determination of the reasonableness of clearance, by a "rule of thumb" not consonant and in harmony with the "rule of law" applicable to the determination of that issue when tested by Sherman Act standards, we cannot perceive how the award here claimed is *res judicata*, or debars any of the plaintiffs from pursuing remedies the law affords them for violations of the Sherman Act.

Therefore, the several motions of the defendants, filed on November 26, 1949, for leave to amend their answers in the above respects, are by the Court denied.