CITY OF SIOUX CITY, a municipal corporation, appellant, v. JOSEPH E. YOUNG; BOARD OF TRUSTEES of the POLICEMEN'S PENSION and RETIREMENT FUNDS (members), appellees.

No. 49745.

(Reported in 97 N.W.2d 907)

JULY 24, 1959.

Paul J. Yaneff, Assistant City Attorney, of Sioux City, for appellant.

Bernard A. Brown and Fred S. Nordenson, of Brown & Nordenson, of Sioux City, for appellee Joseph E. Young.

THOMPSON, C. J.—Perseverance is sometimes a virtue and is often rewarded. "If at first you don't succeed, try, try again" says the old copybook maxim. Joseph E. Young, the benefited defendant here, has beyond doubt practiced these principles. Litigation concerning his right to a pension as the surviving spouse of a deceased policewoman pensioner now appears in this court for the third time. In Young v. O'Keefe, 246 Iowa 1182,

69 N.W.2d 534, it made its first appearance. The basis of that suit was that the trustees of the policemen's pension fund had denied his claim; there was an affirmance by the district court and by this court. We there held that "widowers" were not included in the statutory language defining those entitled to survivor's pensions.

Thereupon the legislature, which can hardly be accused of lack of co-operation in Mr. Young's efforts, amended the statutes applicable—sections 410.10, 411.1(10) and 411.6(13)—so that all "spouses" of deceased pensioners are included. See House Files 174 and 229, Acts of the Fifty-sixth General Assembly. This brought about the second attempt by Mr. Young. Again the trustees denied his claim, again the district court upheld them, and again, upon appeal, we affirmed. Young v. O'Keefe, 248 Iowa 751, 82 N.W.2d 111. Our decision was based upon two grounds: that the statutes as amended by the Fifty-sixth General Assembly were not retroactive; and if they were so construed the doctrine of res judicata would apply.

Again the legislature, acting as the Fifty-seventh General Assembly, tried a remedial measure. It enacted chapter 200, effective July 4, 1957, which we quote:

"SECTION 1. Section four hundred ten point ten (410.10), Code 1954, is amended by adding a paragraph thereto as follows:

"This section and its provisions shall be interpreted for all purposes as including all surviving spouses whether such spouse existed at the time of the amendments to said section by the Fifty-sixth General Assembly or became such surviving spouse thereafter."

Mr. Young then filed his third application for a survivor's pension with the Board of Trustees, and on September 12, 1957, it was granted. The Woodbury District Court upon application of the City of Sioux City granted a writ of certiorari to review this holding of the board, but upon trial the writ was annulled and the action of the Board of Trustees upheld. The matter is now before us upon appeal by the city from this judgment.

I. We are first confronted with a matter of procedure. The defendant-appellee Young contends that the City of Sioux City has no right to bring an action against the Board of Trustees. The argument is that the board is an arm of the city, and a suit

by the city against it is in effect a suit by the city against itself; that it is actually attempting to act as both plaintiff and defendant, and under well-established rules of law and of logic this may not be done.

We find no merit in this contention. We think the argument is answered by holdings in State v. Bonzer, 68 N.D. 311, 279 N.W. 769, relied upon strongly by the appellee Young, who will hereinafter be referred to as the defendant. After stating the general rule that the same person cannot be both plaintiff and defendant in an action, the court said: "* * * this rule * * * does not apply where according to the actual interests involved the case does not amount to an action by one party against himself. * * * In the first place there is an actual controversy. * * * The State has no interest in this fund other than to see it is safely guarded and conserved and that those for whose benefit it is created receive their just dues." 68 N.D., pages 315, 316, 279 N.W., pages 771, 772.

It is the duty of a city or town to levy an annual tax for the purpose of creating a pension fund. Section 410.1, Code of 1958. The Board of Trustees of the fund is set up by law, and its actions are not controlled by the city. Section 410.2, Code of 1958. But we think the city has the right, even the duty, to see that the fund, a large part of which is raised by taxes from the citizens, is administered and disbursed in accordance with law; and to this end it may bring an action to prevent illegal allowances and expenditures. 64 C. J. S., Municipal Corporations, section 2186(2), page 1030; Jersey City v. Hague, 18 N.J. 584, 115 A.2d 8; City of Philadelphia v. Wyszynski, 381 Pa. 153, 112 A.2d 327. It requires no extensive analysis of the situation here to know that the interests of the City of Sioux City on the one hand and of Young and the board on the other are not the same, and that an actual controversy is involved. Defendant's position at this point is entirely lacking in merit.

II. We turn then to the substantial question involved. It may be stated thus: May the legislature by a later enactment direct the courts to give an interpretation to a statute different from the one which they have already applied to the same law in a case involving the same claim, the same state of facts and the same parties? We think it clear that it may not.

Our opinion in the second Young v. O'Keefe case, 248 Iowa 751, 82 N.W.2d 111, answers every contention made by the defendant in the litigation now before us. It must be remembered that the facts are identical in the first two cases and this one. And all three cases affect the same parties, involve the same subject matter and determine the same cause of action. Hoover v. Iowa State Highway Commission, 210 Iowa 1, 8, 230 N.W. 561, 564, cited with approval in the second Young v. O'Keefe case, supra, at page 756 of 248 Iowa, page 114 of 82 N.W.2d. In the case in 248 Iowa, 82 N.W.2d, which we shall hereinafter designate as the second case, we were considering the effect of legislative amendments which changed the word "widow" to "spouse." We there held that the amendments were not to be construed as retroactive, but prospective only, and so did not bring Mr. Young within their operation.

██ After we had so interpreted the amendments, the Fifty-seventh General Assembly, by enacting chapter 200 of its Acts, attempted to change the nonretroactive construction we had put upon them. It said "This section [410.10, Code of 1954] * * * shall be interpreted for all purposes as including all surviving spouses whether such spouse existed at the time of the amendments to said section by the Fifty-sixth General Assembly or became such surviving spouse thereafter." It must be the contention of the defendant here that the legislature thereby overruled our interpretation of the amendments made by the Fifty-sixth General Assembly, and that we are now bound to follow the legislative fiat. We do not agree. The legislature had a right to say whether its enactments were retrospective or prospective, as applied to future interpretations; it did not have the right to direct the courts how its statutes were to be construed with reference to matters already decided. We have construed the amendments made by the Fifty-sixth General Assembly as applied to a certain case; the legislature may not, by later enactment, direct us to change our interpretation as it affects this same litigation. In Richardson v. Fitzgerald, 132 Iowa 253, 255, 109 N.W. 866, 867, we said: "* * * any direction by the Legislature that the judicial function shall be performed in a particular [certain] way is a plain violation of the Constitution." Immediately following this, page 255 of 132 Iowa, page 867 of 109

N.W., we quoted with approval from Cooley on Constitutional Limitations (7th Ed.) 114: *"As the Legislature cannot set aside the construction of the law already applied by the courts to actual cases,* neither can it compel courts for the future to adopt a particular construction of a law which the Legislature permits to remain in force." (Italics supplied.) We further said, at the same pages: "Expository legislation is so uniformly condemned by the courts that we need cite no more than a few of the numerous decisions with our approval of the principle. [Citing authorities] The Legislature may say what the law shall be, not what it is or has been * * *." To the same effect is Anderson v. Hadley, 245 Iowa 550, 559, 63 N.W.2d 234, 239, from which we quote: "* * * courts are not bound by the mere construction one legislature may put upon an act of a previous session. The interpretation of an existing statute is a judicial, not a legislative, function. * * * The legislative intent that controls in the construction of a statute has reference to the legislature that enacted it, not a subsequent one." To the same effect is Des Moines Independent Community School District v. Armstrong, 250 Iowa 634, 645, · 646, 95 N.W.2d 515, 521, 522.

 III. In fact, every point made by the defendant here to support his claim is denied by the opinion in the second case, in 248 Iowa. We there held that the statute changing "widow" to "spouse" was not retroactive. We are now confronted by a later legislative enactment saying we shall interpret it as retroactive. This comes clearly within the things the legislature may not do to control the decisions of the courts, as defined in the authorities cited and quoted from last above. We further said that if we should construe the amendments of the Fifty-sixth General Assembly as retroactive, "to do so would run into the doctrine of res judicata." Page 757 of 248 Iowa, page 115 of 82 N.W.2d.

We also said: "The spectre of res judicata arises to haunt plaintiff. The record conclusively establishes that his case was already adjudicated when the statutory change occurred. He seeks here to establish the same status he sought before, by the same evidence. * * * If the purpose of res judicata be to add *finality* to judicial decision, the propriety of its presence here cannot be doubted. A judgment based on plain statutory con-

struction, as was our earlier decision [246 Iowa 1182, 69 N.W.2d 534], would not be exactly *final* if the legislature could by subsequent retroactive (nunc pro tunc) change of statute reopen the identical controversy for the benefit of a losing litigant." 248 Iowa at pages 755, 756, 82 N.W.2d at pages 114, 115. Further pertinent language is this: "To accomplish it would require us to hold the amendment not only was not retroactive, but that it was sufficient to create a new right. The language will not bear that construction."

What we held in the second case, supra, was that the amendments made by the Fifty-sixth General Assembly were not retroactive; and that, if we should so construe them, the plaintiff's claim would still be defeated by the doctrine of res judicata because it had been litigated and denied by the first case, Young v. O'Keefe, supra, 246 Iowa 1182, 69 N.W.2d 534. The amendment enacted by the Fifty-seventh General Assembly, supra, is a clear attempt, so far as this litigation is concerned, to direct us to consider the amendments of the Fifty-sixth General Assembly as retroactive, in reversal of our previous holding. This was beyond the power of the legislature, nor would it avail Mr. Young in any event; because we said in the second case that such a construction would merely result in a holding that he was barred by res judicata.

The defendant relies much upon Wagner v. Baron, Fla., 64 So.2d 267, 37 A. L. R.2d 831. We shall not attempt to analyze this case, further than to point out that the decision was by a court divided four to three, and that the reason given by one of the majority for his concurrence has little to do with the legal questions involved. To us, the reasoning of the minority seems sound. In any event, we think the case at bar is ruled by the second Young v. O'Keefe case, supra. We cannot affirm the judgment of the trial court unless we abandon the reasoning of that case and overrule it. This we are not inclined to do. We there held the statute not retroactive, which determined the proper interpretation of it so far as Mr. Young's claim is concerned. In addition, we now have two adjudications that he may not recover instead of one. As we said in the second case, matters that have been decided by the courts may not be reopened by a

later legislative attempt to say that the construction put upon a statute must be changed for the benefit of a losing litigant.

The case is reversed and remanded to the district court with directions to sustain the writ of certiorari. All costs will be taxed against defendant-appellee Young, except that appellant will be allowed only $1.50 per page as cost of printing the record. —Reversed and remanded, with directions.

GARFIELD, GARRETT, OLIVER, PETERSON, and THORNTON, JJ., concur.

LARSON, J., concurs specially.

BLISS and HAYS, JJ., join in special concurrence.

LARSON, J. (concurring specially)—I am satisfied that the legislature by chapter 200, Acts of the Fifty-seventh General Assembly, amending section 410.10, Code of 1954, did not in fact create any new rights or modify the applicable law, that it did no more than invade the court's judicial function of construing the enacted statutes, and since the action was between the same parties, involving the same facts and same law, the prior judgment was res judicata. I am unwilling to conclude that the legislature could not, by proper enactment, extend to Joseph E. Young and anyone in like situations the right to participate in that pension system, or that the judgments previously rendered on Young's claim would in such case be res judicata. I am satisfied the opinion of the majority, insofar as it attempts to deny or discourage any further legislative action in this field, is both unnecessary and improper.

I did not join in the former decision in Young v. O'Keefe, 248 Iowa 751, 82 N.W.2d 111, because I did not believe the doctrine of res judicata was applicable and found no necessity for reference to it therein. My fears were not groundless for here the majority not only needlessly apply those conclusions to this case, but cite the finding and reasoning in that decision as authority for its present use. To that extent I disagree.

Our judgment in the second Young v. O'Keefe case, supra, denied Young's claim due to the fact that he failed to show any new right applicable to him, because the enlarged benefits had

not been made retroactive. Unquestionably, new rights were established, which if it were determined were retroactive would apply to him. He is a surviving "spouse." As to those extended benefits or rights which he contended were extended to him by the Fifty-sixth General Assembly, there had been no previous judgment to estop his second action. The rule applicable is found in Security Savings Bank v. Connell, 198 Iowa 564, 568, 200 N.W. 8, 10, 36 A. L. R. 486, where we said: "Moreover, the force of the estoppel, if estoppel there be, is in the judgments themselves; not in the finding or reasoning of the court by which the conclusions were reached." Linton v. Crosby, 61 Iowa 293, 16 N.W. 113.

. Our judgment in Young v. O'Keefe, supra, as I view it, was simply that the claimed benefits were not available to Young because the statutes involved were not made retroactive. In other words, rights which he claimed were nonexistent. Neither had the law been changed to include him and his class. To that extent the decision was sound, but the findings and reasoning upon which the application of the doctrine of res judicata conclusion was reached was mere dictum and unsound. How would a construction of the amended statute creating new rights in Young, as retroactive, "run into the doctrine of res judicata"? Insofar as that erroneous conclusion is repeated in this case in Division III of the majority opinion, I respectfully dissent. If the Fifty-sixth or Fifty-seventh General Assembly had clearly made the extended benefits for the surviving spouse retroactive, claimant's following action would not have been estopped and the judgment in his first case would not amount to res judicata. New statutory rights were then involved. The authorities, I believe, are overwhelming that hold a judgment is not res judicata as to rights which were not in existence at the time of the rendition of the judgment. 30 Am. Jur., Judgments, section 206, page 943; 50 C. J. S., Judgments, section 650, page 92.

It is said in 30 Am. Jur., supra, page 943: "However, where, after the rendition of a judgment, subsequent events occur, creating a new legal situation or altering the legal rights or relations of the litigants, the judgment may thereby be precluded from operating as an estoppel." Security Savings Bank v. Connell.

supra, 198 Iowa 564, 568, 200 N.W. 8, 36 A. L. R. 486; Cox v. Revelle, 125 Md. 579, 94 A. 203, L. R. A. 1915E 443; 37 A. L. R.2d, annotation, page 836.

In the Connell case this court held that a decree to the effect that bank stock is, under a statute, assessable for a certain year only when the value of tax-exempt Federal securities held by the bank is first deducted, is not an adjudication that such deduction must be made in a subsequent year after the unconstitutionality of the said statute has been judicially determined. We said therein at page 573 of 198 Iowa: "The subsequent determination that the statute was unconstitutional so changed the legal situation, as affecting the right to the deduction claimed, that the prior decrees holding the bank entitled to the deduction are not binding as res judicata in respect to the tax in subsequent years."

In the Cox case, supra, the court held that an adjudication as to the leasable character of certain oyster grounds under one Act of the legislature will *not* justify the denial by the court of the state's power to condemn such property for public purposes under a later enactment.

In the recent Florida case of Wagner v. Baron, cited by appellee, Fla., 64 So.2d 267, 37 A. L. R.2d 831, the court said: "The cases are legion which hold that res judicata is not a defense in a subsequent action where the law under which the first judgment was obtained is different from that applicable to the second action * * * or a change in the law between the first and second judgment, creating an altered situation." Mission Theatres v. Twentieth Century-Fox Film Corp., 88 F. Supp. 681, 684; Sunnen v. Commissioner of Internal Revenue, 8 Cir., 161 F.2d 171, 178; Bush v. Commissioner of Internal Revenue, 2 Cir., 175 F.2d 391; Williams v. Ledbetter, 87 Ohio App. 171, 94 N.E.2d 377; Young Men's Christian Assn. v. Sestric, 362 Mo. 551, 242 S.W.2d 497; Hurd v. Albert, 214 Cal. 15, 3 P.2d 545, 76 A. L. R. 1348; Mullane v. McKenzie, 269 N. Y. 369, 199 N. E. 624, 103 A. L. R. 758, and others cited.

In Wagner v. Baron, supra (64 So.2d at 268), the Florida court said: "Clearly, a judgment is not res judicata as to rights which were not in existence and which could not have been

litigated at the time the prior judgment was entered." Obviously any other conclusion would border on the ridiculous.

In the first Young case, 246 Iowa 1182, 69 N.W.2d 534, we held applicant had no rights under the then-existing law because "widow" did not include "widowers." Widowers had no existing rights at that time. After the statute had been amended by the Fifty-sixth General Assembly the law gave those rights to the surviving "spouses." Clearly if this had been the law when Young's wife had died, he would have been included, but we said there was nothing to indicate the amended statute was retroactive and, in the second case between the parties, again denied his claim. On that basis the decision was correct, but to hold that the legislature did not have the power to thereafter grant to Young and his class such benefits clearly exceeds judicial authority.

In the case of Utter v. Franklin, 172 U. S. 416, 423, 424, 19 S. Ct. 183, 186, 43 L. Ed. 498, 501, the court dealt with this question. In holding that a judgment decreeing bonds to be invalid is not res judicata as to their validity after a subsequent statute has cured their defect, the court said:

"We think it was within the power of Congress to validate these bonds. * * * There was nothing at that time to have prevented Congress from authorizing such municipalities to issue bonds in aid of railways, and that which Congress could have originally authorized it might subsequently confirm and ratify. This court has repeatedly held that Congress has full legislative power over the Territories, as full as that which a state legislature has over its municipal corporations. American Ins. Co. v. [356 Bales of Cotton] Canter, 1 Pet. 511, 7 L. Ed. 242; National Bank v. County of Yankton, 101 U. S. 129, 25 L. Ed. 1046." Continuing, the court said: "The fact that this court had held the original Pima County bonds invalid does not affect the question. They were invalid because there was no power to issue them. They were made valid by such power being subsequently given, and it makes no possible difference that they had been declared to be void under the power originally given. *The judgment in that case was res adjudicata only of the issues then presented, of the facts as they then appeared, and of the legislation then existing.*" (Emphasis supplied.)

It must be clear in the instant case that originally the legislature could have authorized the payment of pension benefits to widowers, as well as widows, and that it could have made the law retroactive to cover existing situations. What it could have done originally it has the power to subsequently grant and extend. Had it done so in any proper manner, this court should not interfere.

The first amendment granted rights to all spouses. The statute as amended by the Fifty-seventh General Assembly did not extend or confirm rights in existing widowers prior to the first amendment, but simply directed the court to interpret the statute as retroactive. We had already interpreted it as not being retroactive, and the legislature cannot directly change that determination. However, I am not content with the conclusion that the legislature does not have the power, if properly exercised, to extend to applicant and those in his class the right to claim pension benefits of the municipality, under such statutes.